### DENTON v. ENGLISH.

(Court of Civil Appeals of Texas. San Antonio. April 30, 1913. Rehearing Denied May 28, 1913.)

1. TRIAL (§ 420*)—DIRECTION OF VERDICT—WAIVER OF ERROR.

Where appellant did not stand on his motion for an instructed verdict, but after it was overruled introduced testimony, there was no merit in his assignment of error in overruling such motion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

2. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING ISSUES.

In trespass to try title, in which plaintiff attacked the boundary agreement relied upon by defendant on the ground of fraud, and the testimony on that issue was conflicting, the failure to submit the issue of fraud by defendant in obtaining the agreement from plaintiff was error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

3. BOUNDARIES (§ 46*)—VALIDITY OF AGREEMENT—MISTAKE.

Where the means of information were equally open to both parties to a boundary agreement, a mistake as to the true location of the line, as shown by an approved survey, was not sufficient to invalidate the agreement, un-

less one of the parties knew the true line and thereby gained an advantage over the other.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 212–226, 249–251; Dec. Dig. § 46.*]

4. BOUNDARIES (§ 46*)—VALIDITY OF AGREEMENT—FRAUD.

Where one of the parties to a boundary agreement, who knew about a survey fixing the true line, concealed that fact from the other and thereby induced him to sign a boundary agreement to his disadvantage, the action of the first party constituted such fraud as would invalidate the agreement since, while the law favors agreements as to boundaries when fairly made on equal terms, it condemns fraud in obtaining such agreements.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 212–226, 249–251; Dec. Dig. § 46.*]

Appeal from District Court, Dimmit County; J. F. Mullally, Judge.

Action by Ed English against G. Denton. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

W. H. Davis, of Crystal City, and Jno. M. Rowland and R. P. Ingrum, both of San Antonio, for appellant. Vandervoort & Johnson, of Carrizo Springs, and N. A. Rector, of Austin, for appellee.

FLY, C. J. This is a suit instituted by appellee against appellant to recover certain parts of surveys 39, 46, and 51, in block 6, International & Great Northern Railway Company lands, in Dimmit county. Appellant, in addition to his plea of not guilty, pleaded an agreement as to the boundary line between his lands and those of appellee, whereby the land sued for was acknowledged to be appellant's land. In a supplemental petition appellee attacked the boundary agreement on the ground of fraud and mutual mistake and asked that it be vacated, annulled, and set aside. The cause was submitted to a jury and resulted in a verdict and judgment for appellee.

The controversy in this case is over the location of the east line of appellee's surveys 39, 46, and 51; appellant claiming the boundary to be marked by appellee's fence under a written agreement fixing it there, and appellee claiming that the agreement was obtained by fraud or mutual mistake, and that the true east boundary line is 565 varas at the north and 475 varas at the south, east of the fence which was agreed upon as the boundary between sections 40, 45, and 52 on the east and 39, 46, and 51 on the west. The evidence fixed the true boundary of appellee's land at from 475 to 565 varas farther east than the place occupied by his fence. By the agreement as to boundary, appellant obtained more than 500 acres of land from appellee which belonged to him.

The agreement as to boundary was signed by appellant, appellee, W. H. Warner, and J. E. Odiorne; appellee and Odiorne stating

that they joined in the boundary agreement on account of their interest as his lienholders. It appeared from the evidence that appellee sold sections 39, 46, and 51, with other lands, to one Townsend for $98,000, of which sum about $85,000 was evidenced by purchase-money notes secured by a vendor's lien. Townsend sold the land to Warner, reciting the fact of the lien for purchase money held by appellee. Warner never resided in Texas, but was a citizen of Ohio. Warner and Townsend failed to pay off the notes, and Warner conveyed the land to appellee. Prior to the last-named conveyance to appellee the boundary agreement was made. It was really made between appellant and appellee, as Warner acted only on advice from appellee, who had not parted with the legal title to the land. Warner owned other lands, concerning which the boundary agreement was made, on which Odiorne had a lien, and Warner still owns those lands. Upholding the boundary agreement would give appellant over 500 acres of land off appellee's land, and over 300 acres off Warner's land, and he lost to Warner about 200 acres of land; that is, appellant would obtain over 600 acres of land that did not belong to him. Warner has not sought to rescind his agreement, and, even with a rescission of the agreement so far as appellee is concerned, appellant has still obtained over 100 acres of land that did not belong to him. He has not made any improvements on the strip of land claimed by him, but is in the same position that he was when he obtained the boundary agreement from appellee.

[1] The first assignment is that the court erred in refusing to instruct a verdict for appellant upon his motion made at the conclusion of appellee's testimony. Appellant did not stand upon his motion, but proceeded to introduce testimony after it was overruled, and consequently there is no merit in his contention. Eberstadt v. State, 92 Tex. 94, 45 S. W. 1007; Goggan v. Goggan, 146 S. W. 968. The first assignment of error should therefore be overruled.

At the conclusion of all the testimony, appellant again moved the court to instruct the jury to return a verdict for appellant, and the refusal so to do is made the subject of the second assignment of error. If the matter was brought to the attention of the court in the motion for new trial, the brief fails to state it. However, we have considered it. The first proposition is that appellee, in order to cancel and nullify the boundary agreement, should restore $10 paid to Warner and the lands lost by appellant and retained by Warner. The $10 consideration was not shown to have been paid to Warner, and he is out over 100 acres of land in his deal with appellant. The latter is in no position to demand restitution from Warner, but, if the agreement be annulled, owes him over 100 acres of land, if his land, now held by him, be severed from that conveyed by him to appellee; and, if all of it is taken together, appellant owes Warner and appellee about 634 acres of land. Appellant has lost no land, but has gained over 100 acres after deducting the amount recovered by appellee. Appellee acted for Warner, as well as himself, in the boundary agreement, but Warner has not seen fit to join in the suit, and appellant has not made him a party, and appellant has no cause to complain if Warner permits him to keep 100 acres of the land. No one would be hurt but Warner.

[2-4] The evidence showed that at the time the boundary agreement was made appellant knew that what was known as the Leckie survey had been made, and knew that the east line of appellee's surveys had been placed east of the fence line of appellee. After gaining that knowledge, appellant pushed the boundary agreement with English. Appellant admitted that he knew about the Leckie survey and that it would move the east line of appellee east of his fence, and knew it would move Warner's east line to a point further east, and stated, "For that reason I saw Mr. English and showed him a blue print, showing the two lines." That blue print was one made for appellant. Leckie had been appointed to make a survey of the land at the instance of appellant. The survey of Leckie was shown by the evidence of the county surveyor, Barker, to be probably correct, except in regard to some distances which in a subsequent survey were corrected by the county surveyor. Leckie's survey was made from Cathedral Rock, a noted natural monument in the vicinity, and his survey was approved by the General Land Office. The county surveyor testified that he and Leckie followed the footsteps of the original surveyor. He stated: "According to my survey I did not move the survey lines at all, but found the fences off the lines from where the original surveyor had located the lines. * * * The Leckie survey was made to the calls in the original field notes. * * * Cathedral Rock was distanced a certain direction and a given number of varas from the corners of the survey, and so I found where the point ought to be and adjusted by calculation the variation that Cathedral Rock would be."

Appellant stated that he knew that Leckie had made a survey, which is quite natural in view of the fact that he procured his appointment to make the survey, and, while he said that he had not seen Leckie's field notes, it is evident that his attorney, to whom he said he left all those matters, had seen the field notes and advised him about them. He said: "I knew there had been a survey, and I was advised that according to the Leckie survey the eastern boundary lines

of surveys 51, 46, and 39 were pushed east of the fence lines. * * * As I understood the Leckie survey, its effect was to move the various surveys north and east of the locations that they had been previously understood to occupy." After he had ascertained the facts as to the Leckie survey, which he knew was authoritative and probably correct, he says: "My attorney advised me that I should get Mr. English to sign the boundary agreement in order to make it binding on Mr. English."

Appellee testified that appellant told him that the fence was on the true line and that he did not know that his east line had been located east of the fence. He denied that appellant had showed him a blue print of Leckie's survey, and said he had never heard of Leckie's survey. He stated that no blue prints of any surveys were exhibited to him by appellant. That testimony was contradicted by appellant, and an issue was thereby raised as to whether appellant was in possession of the facts made known by Leckie's survey as to the location of the boundary line and concealed it from appellee. That issue was not submitted to the jury, but it was tried on an issue not raised by the pleadings or evidence.

The cause as submitted by the court, in the general charge, made the case turn on the knowledge of appellee as to the true line between him and appellant. The question of fraud, which was made the ground of recovery in the pleadings, was not presented by the general charge. The same theory as to a lack of knowledge on the part of appellee was presented by a special charge requested by appellee and given by the court. Although appellee may not have known that there was any confusion or doubt as to the location of his east line, and did not know that his fence was not the true line, that would not militate against the written boundary agreement, unless appellant knew about the true location of the line and thereby gained an advantage over him. Even mutual mistake would not be sufficient to justify the rescission of the boundary contract. As said by the Supreme Court in Hoxey v. Clay, 20 Tex. 582: "Where the means of information are equally open to both parties, and where each is presumed to exercise his own skill, diligence, and judgment, in regard to all extrinsic circumstances, equity will not relieve. In like manner, * * * where the fact is doubtful from its own nature, if the parties have acted with entire good faith, * * * a court of equity will not interpose to afford relief on the ground of a mistake of fact."

In the case of Cooper v. Austin, 58 Tex. 494, the trial judge instructed the jury that, though the agreement had been made and acted on, yet it would not be binding on the complaining party if, at the time he agreed,

he thought the line was the true line, and the Supreme Court held that the charge was incorrect and not sustained by the Texas decisions. To the same effect are George v. Thomas, 16 Tex. 74, 67 Am. Dec. 612; Browning v. Atkinson, 46 Tex. 608; Coleman v. Smith, 55 Tex. 259; and Le Comte v. Toudouze, 82 Tex. 208, 17 S. W. 1047, 27 Am. St. Rep. 870.

A failure to disclose a material fact affecting the subject-matter of a contract, however unintentional and blameless, often constitutes a sufficient ground for the annulment of a contract procured thereby. When there is intentional fraud connected with the concealment of the fact, equity will always relieve the party who has been injuriously affected by it. If, as appears from appellee's testimony, appellant, who knew about the Leckie survey, concealed that fact from appellee and thereby induced him to sign the agreement as to boundary, his action would amount to such fraud as would justify a rescission of the contract. The law favors agreements as to boundaries, which are fairly made, but it condemns fraud in obtaining such an agreement just as it would any other agreement obtained by fraud. To make such an agreement binding the parties must negotiate with each other on equal terms, and one of the contracting parties will not be permitted to obtain a large body of land from the other where he is in possession of facts, which he concealed, and thereby obtained the agreement.

It was error in the court to submit the cause on the issue of mistake on the part of appellee, or on the part of both appellant and appellee, and it was also error to refuse to submit the cause, as requested by appellee, on the only issue in the case—that of the fraud or concealment of appellant in obtaining the agreement from appellee. The latter has presented the error in refusing the charge in a cross-assignment. We have considered all of the assignments having any merit.

The judgment is reversed, and the cause remanded.