SOLOMON et al. v. MERCHANTS' & PLANTERS' NAT. BANK et al.
(No. 1272.)

(Court of Civil Appeals of Texas. Texarkana. June 4, 1914.)

1. BILLS AND NOTES (§ 537*)—EXECUTION—ISSUES—EVIDENCE.

Evidence that, though the note sued on was not signed by one defendant, it was signed for him under his authority, by his son, was insufficient to present any issue as to whether such defendant executed the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. § 537.*]

2. BILLS AND NOTES (§ 58*)—DEFENSE—CONTEMPORANEOUS AGREEMENT.

An agreement between the makers of a note that it should not be used unless signed by other parties will not defeat the payee's right to recover on it, unless he had notice thereof when he accepted it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 104; Dec. Dig. § 58.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

3. BILLS AND NOTES (§ 537* )— ACTION ON NOTE—ISSUE OF FRAUD—EVIDENCE.

In an action on a note, defendants' evidence, which merely showed an ordinary transaction of parties borrowing money from the plaintiff bank on the faith of their own and other signatures to a note and failing to repay it as agreed, presented no issue of fraud as to other makers and the bank's notice thereof for submission to the jury.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. § 537.*]

4. PRINCIPAL AND SURETY (§ 113*) — DISCHARGE OF SURETY—BANKING.

Where the principal on a note payable to a bank has money on deposit in the bank after maturity more than sufficient to pay it, the bank's failure to apply it to the payment of the note will not discharge the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 235–239; Dec. Dig. § 113.*]

5. BILLS AND NOTES (§ 537*) — PRINCIPAL DEBTOR—SUBMISSION OF ISSUES—EVIDENCE.

In an action against A. as principal and P. and others as sureties on a note, evidence that A. asked to borrow money of the plaintiff bank and later returned with the note upon which he secured the money, that "P. spoke to him about the matter before the money was loaned, and said he thought it would be all right," that P.'s name was the only one on the note when a surety signed it, that A. and P. together asked another surety to sign with them, and that P. stated that he would see that such surety "did not lose anything on it," presented an issue for the determination of the jury as to whether P. was a principal debtor on the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1893; Dec. Dig. § 537.*]

6. APPEAL AND ERROR (§ 499*) — PRESENTATION FOR REVIEW — EXCLUSION OF TESTIMONY—BILLS OF EXCEPTION.

Exceptions to the exclusion of testimony could not be considered on appeal, where the grounds thereof were not set out in the bills of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 499.*]

7. APPEAL AND ERROR (§ 1173*)—DISPOSITION OF CAUSE.

That a judgment for plaintiff on a verdict following a peremptory instruction must be reversed for new trial as between the defendants to determine who is the principal debtor and who are sureties, will not require that it be reversed as between defendants and plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4562–4572, 4656; Dec. Dig. § 1173.*]

Appeal from Franklin County Court; J. J. Walker, Judge.

Action by the Merchants' & Planters' National Bank and others against H. C. Solomon and others. From judgment for plaintiffs, defendants Solomon and another appeal. Affirmed in part and reversed in part.

The appellee bank, plaintiff below, sought a recovery against appellees J. R. Penn and W. T. Barnett and appellant Solomon and Morton on a promissory note, whereby they and one J. T. Adair, and each of them, undertook to pay to the order of said bank on October 1, 1912, the sum of $336. In its petition the bank alleged that the other makers of the note were sureties for Adair, who, it averred, was the principal debtor. As a reason why it did not sue Adair, the bank alleged that he was insolvent, and that his residence was unknown to it. The trial court peremptorily instructed the jury to find in favor of the bank, and on their verdict rendered judgment in its favor against Solomon, Morton, Penn, and Barnett for the sum of $346.64. The appeal is prosecuted by appellants Solomon and Morton alone.

Cowan & Hunt, of Mt. Vernon, for appellants. Wilkinson & Wilkinson, of Mt. Vernon, for appellees.

WILLSON, C. J. (after stating the facts as above). [1-4] Various reasons why the court should not have peremptorily instructed the jury in favor of the bank for the amount due on the note are urged by appellants in their brief. It is insisted: First, that the testimony made an issue as to whether appellant Morton executed the note or not. But clearly, we think, it did not. While the note was not actually signed by Morton, it was signed by his son for him, and he testified he authorized his son to so sign it. It is next insisted that there was testimony showing that Solomon executed the note on the condition that same would also be executed by one Hughes. But it is not pretended that the bank at the time it parted with its money on the faith of the note knew anything about such a condition. In Davis v. Gray, 61 Tex. 506, the Supreme Court held that an agreement between the makers of such a note that it should not be used unless signed by other parties will not defeat the right of the payee to recover on it, unless it is shown that he had notice thereof at the time he accepted it. In the absence, that court said, of such notice, the payee may "rely upon the intention of all the parties whose signatures were on it, to make with him the contract which the note evidenced." And see 1 Daniel on Neg. Inst. § 854. It is next insisted that "the question of the fraudulent scheme of Adair and Penn and the bank's notice thereof" should have been submitted to the jury. Appellants do not cite us to, and we have not found in the record, any testimony tending to show the existence of such a scheme. The transaction seems, for anything appearing to the contrary in the record, to have been the ordinary one of parties borrowing money from a bank on the faith of their own and other signatures to a note and failing to repay it as agreed upon. We do not understand that an issue of fraud is made by evidence showing nothing more than such a transaction. Finally it is insisted that the testimony made an issue as to whether the bank, after notice to it of the assumed fraudulent conduct of Adair and Penn, permitted them to with-

draw money to their credit on checking accounts with it, instead of applying such money to the satisfaction of the note. In reply to this contention it is enough to say that if there had been evidence of fraud on the part of Adair and Penn of which the bank had notice, and if Adair and Penn had had money to their credit on such accounts with it, the bank was not bound to apply it to the debt evidenced by the note in order to protect appellants against the liability they assumed when they executed the note.

"Where," said the court in Houston v. Braden, 37 S. W. 468, "the principal on a note payable to a bank has funds on deposit in the bank after maturity, more than sufficient to pay it, the omission of the bank to appropriate the deposit to the payment of the note will not discharge the surety."

The court which decided the Braden Case quoted approvingly as follows from a Pennsylvania case (Bank v. Legrand, 103 Pa. 309, 49 Am. Rep. 126) in which the Pennsylvania court undertook to state the general rule and an exception to it, applicable to a case like this one, is:

"We fully recognize the rule that, where a principal creditor has the means of satisfaction actually or potentially within his grasp, he must retain them for the benefit of the surety, but we regard the case of bank deposits as an exception to the rule. * * * While it is true that a bank is a mere debtor to its depositor for the amount of his deposit, and therefore, in an action by the bank against the depositor, on a note upon which he is liable, the latter may set off his deposit, yet we do not think the bank is bound to hold a deposit for" its protection. "A bank deposit is different from an ordinary debt, in this, that from its very nature it is constantly subject to the check of the depositor, and is always payable on demand. The convenience of the commercial world, the enormous amount of transactions by means of bank checks, occurring on every business day in all parts of the country, require that the greatest facilities should be afforded for the use of bank deposits by means of checks drawn against them. The free use of checks * * * would be greatly impaired if the banks could only honor them on peril of relieving indorsers, without an investigation of the state of the depositor's liabilities upon discounted paper."

And see Bank v. Powell, 149 S. W. 1103.

[5, 6] In their answer appellants alleged that Penn was not a surety on the note, as he claimed to be and as the bank averred he was, but, instead, was a principal with Adair, and that, as sureties for him as well as for Adair, they were entitled, in the event a recovery was had by the bank against them, to judgment over against Penn. The testimony with reference to this phase of the case was about as follows: Dupree, the president of the appellee bank, testified that "Adair borrowed the money for which the note was given." "Adair," he said, "came to the bank and asked to borrow the amount of money. I made out the note and gave it to him. He afterwards came back with the note, and I accepted the note and let him have the money." He further testified that Penn "spoke to him about the matter before the money was loaned, and said he thought it would be all right." Dan Morton, who signed the note for his father, appellant Morton, testified that at the time he so signed it "Penn's name was the only name on the note." Appellee Barnett testified that Adair and Penn, together, came to him and asked him to sign the note with them, and that Penn then stated that he would see that he (witness) "did not lose anything on it." Penn did not testify. We are of the opinion that the testimony referred to above made an issue as to whether Penn was a principal debtor on the note or not, which should have been submitted to the jury, and therefore that appellants' ninth assignment of error should be sustained. Bills of exception taken to the action of the court in excluding certain testimony offered by appellants, which we cannot consider in connection with assignments which complain of such action of the court, because the grounds of the objections to the testimony are not set out in the bills (Ry. Co. v. Blocker, 138 S. W. 160; Armstrong v. Burt, 138 S. W. 175), indicate that appellants, had they been permitted to do so, could have produced other testimony than that recited tending to prove their contention that Penn was a principal, and not a surety on the note.

[7] The fact that the judgment should be reversed for a new trial as between appellants and Penn is no reason why it should be reversed for such a purpose as between appellants and the bank. It therefore will be affirmed in so far as it is in favor of the bank against appellants, and reversed in so far as it determined the issue between appellants and Penn, and the cause as between them will be remanded for a new trial.