This is, in form, an action of trespass to try title to a strip of land 5,700 varas long by 491 varas wide, alleged to be off of the east ends of surveys 39, 46, and 51 in block 6, International Great Northern Railway Company lands in Dimmit county, Tex. It is in reality a controversy over the location of a boundary line. Appellant claimed that the land in controversy did not form any part of the surveys named, and also pleaded a boundary agreement to fix the line along a certain fence between the lands of W. H. Warner on the west of the fence and the lands of appellant on the east of the fence. Appellee pleaded, in reply to the allegations of appellant, the fraud of appellant in procuring the boundary agreement from him; that neither he nor Warner, his immediate vendor, knew anything of the true location of the line; and that appellant knew that the true bounddary line was in a different place from that agreed upon. The cause was tried by jury, resulting in a verdict and judgment for appellee. This is a second appeal, the former opinion of this court being reported in 157 S.W. 264, which is referred to as containing a full statement of the issues in this case.
The testimony justified the jury in finding that the boundary agreement was obtained by fraud and that the true boundary line is *Page 250 
5,700 varas long and 491 varas east of the fence at the north end and 475 varas at the south end, and that it belonged to appellee, and was a part of surveys 39, 46, and 51 in block 6, International Great Northern Railway lands.
The first and second assignments of error are overruled. Appellant knew that the state surveyor had surveyed the land and had established a boundary line different from the one in regard to which he afterwards procured the agreement from appellee. He knew of the boundary established by Leckie, who made the survey for the state, because he applied for and purchased from the state the vacant land made apparent by the survey. He knew that the Leckie survey threw the east lines of block 6 and block 10, 475 to 491 varas further east than they were thought to be when appellee built his fence, and he knew that when he obtained the agreement from appellee that the boundary line was not along the fence and that he was depriving appellee of about 490 acres of land. Appellee did not know that Leckie had placed the line where he did and appellant failed to disclose that fact to him. The evidence showed that the Leckie survey fixed the true boundary line. The question of fraud was raised by the testimony and was properly submitted to the jury. This question was fully determined on the former appeal of this case. As said in our opinion:
"A failure to disclose a material fact affecting the subject-matter of a contract, however unintentional and blameless, often constitutes a sufficient ground for the annulment of a contract procured thereby. When there is intentional fraud connected with the concealment of the fact, equity will always relieve the party who has been injuriously affected by it. If, as appears from appellee's testimony, appellant, who knew about the Leckie survey, concealed that fact from appellee and thereby induced him to sign the agreement as to boundary, his action would amount to such fraud as would justify a rescission of the contract."
Appellant applied for and obtained the survey and knew where the lines were placed in that survey, but he told appellee that the true line was along the fence. His attorney advised him to obtain the boundary agreement from appellee, and he did it. He claimed to have told appellee about the survey, but appellee denied it, and it is highly improbable that appellee would have agreed to a boundary which deprived him of nearly 500 acres of land, if he had known the same facts that appellant knew. The jury were justified in finding that the boundary agreement had been procured by fraud.
The report of the state surveyor was filed in the General Land Office and became an archive therein. The survey was made by the state and had reference to public lands of the state. The report of the surveyor was one permitted, if not required, to be filed in the General Land Office. "All the books, papers, records, rolls, documents, returns, reports, lists, and all other papers that have been, are now, or that may hereafter be required by law to be kept, filed or deposited in any of the offices of the executive department of this state, shall constitute a part of the archives of the offices in which the same are so kept, filed or deposited." The survey was made under orders of the land commissioner, given by virtue of the authority vested in him by the statutes of the state. Article 5397, Rev.Stats. That statute makes it the duty of the land commissioner to ascertain by all means practicable the existence and extent of all excesses in surveys and to provide for surveys or corrected surveys. The reports of those surveys, as a matter of course, are kept, filed, or deposited in the General Land Office. The report was admissible in evidence. Article 3694.
There were portions of the document, however, that were not a report of the acts of the surveyor, but consisted of argument and opinions, and those parts of the paper were not valid testimony and no doubt would have been rejected by the court if they had been called to his attention. The only objections urged to the admission of the report were:
"Because the aforesaid report constituted but mere declarations of the surveyor, was hearsay and argumentative, and because it was not shown that it was an official survey, nor was it shown that the surveyor was dead; but, on the other hand, it was admitted that W. H. Leckie, the surveyor, was still living at Runge, Tex., and for the further reason that the report offered in evidence was not in itself complete in that the report calls for a map attached called `Green's Map' and marks the same `Exhibit B.' "
The objections were aimed at the whole report, and no effort was made to call the attention of the court to the hearsay or the argument in the report. In the propositions under the two assignments of error the whole report is attacked as being hearsay and argumentative. All of the report is not hearsay, all is not argumentative. It was not the duty of the court to cull the objectionable parts of the report; that duty rested upon appellant. Even in this court the objectionable portions of the report are not pointed out.
In the case of Schunior v. Russell, 83 Tex. 83, 18 S.W. 484, cited by appellant, the court mentions the fact that each part of the report of the surveyor that was objected to was specifically pointed out. The rule is well established that when a writing is offered in evidence parts of which are admissible and parts inadmissible, unless the latter are specifically pointed out, the whole should be admitted. Railway v. Gallaher, 79 Tex. 685, 15 S.W. 694; Railway v. Gormley, 91 Tex. 393,43 S.W. 877, 66 Am.St.Rep. 894; Schulze v. Jalonick, 18 Tex. Civ. App. 296,44 S.W. 580; Sanford v. Finnlgan Co., 169, W. 624, not yet officially reported. For the reasons given, the third, fourth, and fifth assignments of error will be overruled.
The sixth, seventh, ninth, and tenths *Page 251 
assignments of error will not be considered because the objections made to the introduction of the testimony sought by appellant are not stated in the bills of exception reserved by appellant. This is the uniform practice of the higher courts of Texas, from the earliest reports of the Supreme Court down to the present day. Styles v. Gray, 10 Tex. 503; Saunders v. Kincaid, 168 S.W. 977; Solomon v. National Bank, 168 S.W. 1029.
The witness Cartledge stated that he was with the surveyor at "Cathedral Rock," a well-known object situated on one of the surveys; that he found the southwest corner of the survey by mesquite bearing trees called for in the field notes. This was objected to by appellant. Cartledge had testified for appellant and the evidence referred to was brought out on cross-examination. He had testified that he went with the county surveyor to properly locate the surveys, and appellee had the right to cross-examine him on his knowledge of the matter. His testimony was not hearsay, but was as to knowledge gained by him on the ground. The answers of Cartledge could not have injured appellant because the same matters were testified to by Barker, Maddox, and Vandervoort. The southwest corner of survey 6, in block 7, was unquestioned and was established beyond a reasonable doubt to be where Cartledge said he found it.
The charge of the court is not attacked, nor is the sufficiency of the evidence to sustain the verdict brought in question, except on the issue of fraud. Appellant does not claim that the southwest corner of survey 6, being the northwest corner of survey 7, was not situated in the place in which it was located by Cartledge; but, on a mere technical objection to testimony which could not have influenced the verdict, a reversal of the judgment is sought.
The judgment is affirmed.
 On Motion for Rehearing.
This court was fully justified in finding that the attorney of appellant advised him to obtain the assent of appellee to the boundary agreement. It is inconceivable that an attorney should go with his client to Austin to ascertain the details of the survey made by the state, and should then prepare a boundary agreement and still not advise his client as to getting it executed. This court did not hold expressly or by innuendo that the attorney was guilty of fraud in advising a boundary agreement and preparing the same for his client. The fraud, if any, did not consist in advising the client to obtain a boundary agreement, but in the suppression of facts intentionally or innocently. There is nothing in the record that indicates that the attorney advised his client to suppress facts that would have placed appellee upon his guard.
Appellant testified to facts which show that there was no suppression of the facts, but he is contradicted by appellee, and the jury chose to believe appellee. This court has not made any charge of fraud against appellant. He may be perfectly innocent, but in compliance with law we have merely held that the testimony of appellee, which the jury credited, showed that appellant was in possession of facts bearing upon the boundary line, of which appellee was ignorant, and which, if known to him, would have prevented him from signing the boundary agreement. They were not dealing with each other on equal terms, and, however innocent appellant may have been, the fact remains that the jury found that appellee was induced to sign an agreement which he would not have signed had he known the facts. This court does not charge litigants with fraud, but merely declares the effect of evidence and sustains the verdict of a jury finding fraud, as it is compelled to do if there is any evidence to sustain it. The members of this court are not made the judges of the credibility of the witnesses or the weight to be given their testimony; that prerogative belonging to the jury alone.
The motion for rehearing is overruled.