THE OMAHA AUCTION & STORAGE CO. ET AL. V. HARRIET ROGERS.

[FILED JUNE 30, 1892.]

1. Opinion Evidence: VALUE. A person who has a general knowledge of the value of household goods may testify as to such value although he may not have dealt in goods of that kind. (Rogers on Expert Testimony, sec. 152.)

2. Mortgages: SATISFACTION: CONVERSION BY MORTGAGEE. A mortgagee, after due notice, may sell a sufficient amount of the

mortgaged property to satisfy the mortgage debt; but if he sell more than sufficient to satisfy the same and costs necessarily incurred, he will be liable for conversion of such excess.

3. **Instructions,** set out in the opinion, *held,* to be a correct statement of the law.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*Cavanagh & Thomas,* for plaintiff in error, cited: *Engster v. State,* 11 Neb., 542; *Holmes v. Bailey,* 16 Id., 305; *Ahlman v. Meyer,* 19 Id., 68; *Holmes v. Bell,* 3 Cush. [Mass.], 322; *N. E. Mtg. Sec. Co. v. Aughe,* 12 Neb., 506; *Perkins v. Conant,* 29 Ill., 184.

*J. W. West, contra,* cited: *Charter v. Stevens,* 3 Denio [N. Y.], 33.

MAXWELL, CH. J.

This action was brought by the defendant in error to recover from one Octave Bouscaren the value of certain household goods sold under an alleged foreclosure of a chattel mortgage. The plaintiffs in error (defendants below) alleged in their answer that the goods were sold under a chattel mortgage executed by Mrs. Rogers to one named Conalline, which mortgage was assigned to Bouscaren. Mrs. Rogers in her reply alleges usury in the transaction in which the chattel mortgage was given, and a tender of the amount lawfully due thereon prior to the sale. The cause was submitted to a jury, which returned a verdict in favor of Mrs. Rogers for the sum of $408.02, upon which judgment was rendered.

The chattel mortgage is as follows:

"This indenture, made the 25th day of June, A. D. 1888, between Mrs. G. C. Rogers, party of the first part, and G. Conalline, party of the second part,

"Witnesseth, That said party of the first part, in con-

sideration of $97.50 in hand, has bargained and sold, and by these presents do grant and convey, unto the said party of the second part the following described goods, chattels, and property, to-wit: One bedroom set, composed of marble top, black walnut, washstand, dresser, and bed; three oil paintings ; one marble top center table; one large mirror; one upholstered black walnut sofa; one uphol- stered rocking chair; one black walnut upholstered arm chair; one cane rocking chair; one bronze clock; one set antique oak bedroom furniture, composed of bed, wash- stand, and dresser, together with all chairs, bedding, etc.; one No. 3 Silvia stove, not sold; and all carpets, orna- ments, rugs, and personal property of any description con- tained in the house known as 1211 Dodge street, Omaha, Nebraska, and agreed to be kept on such premises; to- gether with all the appurtenances and all the estate, title, and interest of the said party of the first part therein.

"The condition of the above sale is such, that whereas the said party of the first part has executed and delivered to the said party of the second part certain promissory note of even date herewith, payable in ninety days, and bearing interest at the rate of ten per cent per annum after maturity :

"Now if the said party of the first part shall well and truly pay unto the said party of the second part the said note and interest thereon according to the tenor and effect thereof, then this conveyance shall be void; otherwise to be and remain in full force and effect. But in case the said party of the first part shall fail to pay the full amount of said promissory note, principal and interest, according to the tenor and effect thereof, then, in that case, the said party of the second part is hereby authorized and empow- ered to take possession of the above described property and sell the same at public sale, after giving twenty days' notice of such sale by advertisement thereof in some news- paper published in said county of Douglas; and after pay-

ing all the costs, charges, and expenses of every nature incurred in and about the collection of said note, shall apply the remaining proceeds of said sale in payment of said note, principal and interest, and pay over the surplus, if any there be, to the said party of the first part.

" It is hereby expressly agreed that the said party of the second part shall have the right at any time, at his election, to take possession of the above described property and hold the same.

" Witness my hand the day and year first above written.

" MRS. G. C. ROGERS.

" In presence of

" O. BOUSCAREN."

The goods were sold under mortgage on the 23d of April, 1889.

The testimony of Mrs. Rogers is that she borrowed $75 from Bouscaren and executed a note and mortgage to him for $97.50, due in three months, that she made various payments during the ensuing nine months, amounting in all to $69. Bouscaren testifies that he made the loan, that he was not certain as to the exact amount, but he thought he loaned $90. He admits that in any event the loan was grossly usurious. He also admits receiving $65 as payment on the debt before the foreclosure of the mortgage. The note and mortgage seem to have been taken in the name of Conalline to enable Bouscaren to claim that he was an innocent purchaser thereof.

The first objection made by the plaintiff in error is that Mrs. Rogers was not competent to testify as to the value of the goods. It is true she was not dealing in goods, but her testimony shows that she was acquainted with goods of this character and knew something of their value. Her first statement as a witness was that she knew the value of the goods, and her cross-examination failed to show that she did not possess sufficient knowledge to testify as to their value. Her testimony is fair, and while she did not

profess to be a dealer in second-hand goods she did show a sufficient knowledge to entitle her to testify as to the value. (Rogers on Expert Testimony [2d Ed.], sec. 152.

Second—It is claimed that there was no conversion of the goods shown. We think differently, however. It is admitted that considerable more goods were sold than were necessary to satisfy the debt. Where such is the case, the mortgagee is liable for the conversion of the goods so unnecessarily sold. (*Charter v. Stevens*, 3 Denio [N. Y.], 34.)

Third—Objections are made to instructions 1 and 2 given by the court on its own motion. The instructions, however, should be considered as a whole, and when so considered, they are unobjectionable. They are as follows:

"This action is brought by the plaintiff to recover damages which she claims to have sustained by reason of the alleged wrongful conversion by the defendants of the property of the plaintiff. The defendants allege as a defense to the action:

"First—That the goods, for the alleged wrongful conversion of which this suit is brought, were stored with the defendant. The Omaha Auction & Storage Company was to have a first lien on the goods for storage charges, and that such charges were not paid, except the sum of $2.

"Second—That a chattel mortgage had been given by the plaintiff to one G. Conalline, which had been assigned to O. Bouscaren, who took possession of the property and sold the same at public auction; that the defendant Creighton acted as the auctioneer at said sale, and that the proceeds of the sale were applied to the payment of the balance due for storage of the goods to the Omaha Auction & Storage Company and to the expenses of the sale, and to the amount remaining due under the mortgage, and that the goods sold for all they were worth.

"The plaintiff for reply admits that the goods were sold under a chattel mortgage, but she alleges that the mortgage was given by her to secure a loan of money made by de-

8

fendant Bouscaren to her, and that for said loan the de-fendant Bouscaren received a greater rate of interest than was allowed by law, and that of the amount so loaned no more than the sum of $6 remained due thereon at the time of sale, and that such sum was tendered to the defendant before the sale, and that the amount due for storage of the goods with the Omaha Auction & Storage Company had been tendered to such company before the sale.

"You are instructed:

"I. It will be your duty to inquire, First, whether or not there was usury in the transaction between the plaintiff and Bouscaren; and if you find, under the testimony, there was usury, then he, Bouscaren, would be entitled to claim under his mortgage only the amount he had actually loaned to the plaintiff without interest, and she, the plaint-iff, would be entitled to claim as a credit upon such amount of principal any payments which she may have made.

"II. Upon the basis above given in the previous in-struction, you will ascertain from the testimony the amount which was due to Bouscaren at the time of the sale under his mortgage, and to satisfy such amount, with the expenses of the sale, he, Bouscaren, was entitled to sell so much of the goods covered by the mortgage as was nec-essary for that purpose. But if he sold any more of such goods than was necessary to satisfy the amount legally due him under his mortgage, with the expenses of the sale, he would be liable for the fair market value of such goods so sold in excess of the amount required in this action.

"III. If you shall find from the testimony that any amount which may have been due for storage of the goods to the defendant, the Omaha Auction & Storage Company, was tendered by the plaintiff to the company or its agent, then the defendants were not justified in selling the goods for such charge for storage, provided you find from the testimony that such tender was kept good by the plaintiff

by retaining the same for such company, and so notifying it that the amount was subject to its demand.

"IV. If, under the foregoing instructions, you find for the plaintiff, you will ascertain from the testimony the fair market value of such of the goods as were sold after a sufficient amount had been realized to satisfy the amount due. under the chattel .mortgage, with the expenses of the sale, and upon that amount compute interest at the rate of seven per cent per annum from the date of the commencement of this action, to-wit, May 23, 1889, up to the first day of this term, September 22, 1890.

"V. You are instructed that under the laws of this state, as provided by statutory enactment, where a note is given for a loan of money, and for the use thereof a sum of money is received, reserved, or contracted for by the lender exceeding a rate of ten dollars per year upon one hundred dollars, then such a note is an usurious contract and the lender can only recover the principal without interest, and if any interest shall have been paid by the borrower thereon, then the sum or sums so paid are to be credited upon the principal.

"Second—If you find from the evidence that the chattel mortgage under which defendants justify themselves in the sale of the goods in controversy was given to secure an usurious note, as defined in these instructions, and if you further find from the evidence that plaintiff has paid any sum or sums thereon as interest or otherwise, and if, after deducting said sum or sums of money so paid, if any such there were, from the sum of money which plaintiff actually received upon said note, you find that there was still a balance due upon said note, and if you further find that defendants, in selling said goods under said chattel mortgage, sold the same in parcels, then, upon such a state of facts, the court instructs you that after having sold such a part of said goods as realized a sum of money sufficient to pay any such balance,. if any such there was, together with all

costs incurred in keeping, advertising, and selling said goods, then the said mortgage lien was extinguished as to the goods remaining unsold, and the selling of other of said goods under said chattel mortgage was in law a conversion of the same, for the value of which defendants are liable to plaintiff."

It is contended on behalf of the plaintiff in error that the question of usury can be raised only in an action to collect the interest. The statute does not prescribe the nature of the action in which the defense of usury may be made and the court has no right to do so.' The defendant took possession of the goods and was entitled to a sufficient amount to satisfy his legal claim for the money loaned and no more. He took possession and sought to appropriate all the property to his own use. The amount of his claim is put in issue by the pleadings and testimony received thereunder and was properly submitted to the jury. The right to sell for the storage is not claimed by the plaintiff in error. There is no error in the record and the judgment is

AFFIRMED.

THE other judges concur.