UNION PACIFIC RAILROAD COMPANY v. SARAH N. STANWOOD.*

FILED JUNE 4, 1902. No. 11,619.

1. **Evidence as to Value: MOTION TO STRIKE.** The fact that a witness as to values, shown to be competent in that respect, testifies on cross-examination that in making his estimate he took into consideration, besides matters that were proper to be so considered, other matters that were not proper for that purpose, does not entitle a party to have the entire testimony of the witness upon that subject withdrawn from the jury and stricken from the record.

2. **Instructions: WAIVER.** If a party is entitled to have some particular matter affecting the weight or credibility of testimony brought especially to the attention of the jury by an instruction, he waives that right by omitting to ask for such instruction.

3. **Trial: EVIDENCE: ERROR.** When a witness as to the value of real property has testified that he has based his opinion, in part, upon his information as to prices obtained upon sales of other specifically described property in the neighborhood of that in controversy, it is error to exclude evidence of what the prices obtained at such sales actually were.

ERROR to the district court for Douglas county: IRVING F. BAXTER, JUDGE. *Reversed.*

*W. R. Kelly* and *John N. Baldwin,* for plaintiff in error.

*W. J. Connell* and *Isaac E. Congdon, contra.*

* Rehearing allowed. See opinion, p. 158, *post.*

AMES, C.

This is a proceeding by the plaintiff in error to acquire an easement for right of way and depot purposes in a certain lot in Omaha. The testimony as to values was limited by an order of the court to five witnesses on each side of the controversy. The property owner produced five witnesses, who each testified generally to several years' residence in the city, and to a general knowledge of real estate values in the city, and in the neighborhood of the property in suit and of the lot in controversy itself. In the course of cross-examination it was brought out that their estimate of values was based, not only upon said general knowledge and the uses to which the lot was adaptable, but also upon the prices for which, according to their information, neighboring lots had recently been sold, and upon the revenues which could probably have been derived from the property, in conjunction with a building that might have been erected thereon at an estimated cost. On account of the admitted influence of this last mentioned element upon the judgment of the witnesses, the company moved that their testimony be stricken out. An order of the court denying the motion is assigned for error.

We think the assignment is not well made. The objection went to the weight to be given to the testimony of the witnesses, and not to their competency. The latter had been established by answers to preliminary questions upon the examination in chief and is not shaken by anything elicited, or attempted so to be, on cross-examination. If, in such case, the entire testimony could be excluded because the opinion of the witness appears to have been influenced in some degree by matters impertinent to the inquiry, it might reasonably be apprehended that no witness concerning the value of real estate could be found who could successfully withstand the test. The estimates of values in such cases are in their very nature in a large degree speculative and conjectural, and, in mak-

ing them, different minds will be influenced in varying degrees by a multitude of circumstances. That among such circumstances a competent witness has considered some that he ought to have disregarded, can not properly be held to totally discredit his entire testimony, so as to require the whole of it to be withdrawn from consideration. The case is analogous to one in which the witness is shown, upon cross-examination, to have been mistaken as to some important matter of fact, or even to have wilfully testified falsely. In all such instances, the testimony is not stricken out, but its weight and credibility, under proper instructions from the court, are left to the determination of the jury. That the witnesses in this case were sufficiently shown to be competent is too well established to be shaken, by repeated decisions of this court. *Burlington & M. R. R. Co. v. Schluntz*, 14 Neb. 421.; *Omaha Auction & Storage Co. v. Rogers*, 35 Neb. 61; *Chicago, R. I. & P. R. Co. v. Griffith*, 44 Neb. 690; *Mullen v. Kinsey*, 50 Neb. 466.

At the conclusion of the trial the court gave the following instructions:

"Fourth. The jury are instructed that the appellant, Sarah N. Stanwood, is entitled to recover from the defendant railroad company, in this case, the fair market value of the property at the time of its taking, which was on the 10th day of December, 1898. By 'fair market value' is meant the value of the property at the time of the taking, considering its worth for any purpose for which it might reasonably be used in the immediate future, taking into consideration the capabilities of the property, and all the uses and purposes to which it was adapted or to which it might be applied in the immediate future, and any advantage, if any, that the property had, at that time or in the immediate future, by virtue of its position and situation, and for which it was then or in the immediate future available. The 'fair market value' is not what the property is worth solely for the purpose for which it is devoted, nor for the purpose for which the party condemn-

ing it proposes to put it; but it is the highest price the property will bring, at the time of the taking, for any and all uses to which it is devoted and adapted, and for which it is available.

"Fifth. You are further instructed that, in ascertaining from all the evidence in this case the value of said property so appropriated by the defendant company, you can not take into consideration prospective increases in the value of said property, or the improvements to the lots or land, in the immediate vicinity, which were not then in existence or in the course of construction. You can not indulge in speculation or conjecture in arriving at the value of the property so taken."

"Seventh. The jury are the sole judges of the weight of the evidence and the credibility of the witnesses. In passing upon the credibility of the witnesses, it is your duty to take into consideration their appearance upon the witness stand, their manner of testifying, their interest or lack of interest, if any, in the result of the suit, their distinctness of recollection, means of knowledge, the probability or improbability of their statements, and the extent to which they have or have not been corroborated by the testimony of other witnesses, or by facts and circumstances admitted or proved upon the trial. You should not disregard the testimony of any witness unless, for any reason, you find it to be unreliable. If the testimony of the witness appears to be fair, is not unreasonable, and is consistent with itself, and the witness has not been in any manner impeached, then, you have no right to disregard the testimony of such witness from mere caprice or without cause."

It is complained of these instructions, especially that numbered "fourth," that they are erroneous because of omitting to call specific attention to the above mentioned element of joint rental values of ground and building, and failing to tell the jury that such value was not proper to be considered by the witness or by themselves. In the foregoing discussion, we have assumed, without deciding,

that consideration of such conjectural rentals was objectionable for the reasons urged. Continuing upon the same assumption, we do not think the instructions taken together are liable to impeachment. They state the rule for determining the measure of damages, in so far as it can be properly said that there is any such rule, comprehensively and accurately. The plaintiff in error complains that there is a peculiar feature of the testimony, drawn out upon cross-examination, to which it was entitled to have the attention of the jury especially directed, as having a tendency to diminish its weight or call in question its credibility. If so, we think the company waived its right by failing to ask for an instruction treating of that precise matter. Following the analogy above instanced, if one of the witnesses had apparently testified to a wilful falsehood, it would probably not be contended that it would have been the duty of the judge, of his own motion, to advert to the matter in his instructions, further than to say generally that the candor and truthfulness of the witnesses were matters peculiarly within their own province, to be considered in deciding what degree of reliance should be placed upon their testimony. If the party liable to prejudice by the supposed false testimony had desired the court to go further, he might have asked a specific instruction to the effect that, if the jury found that any witness had been guilty of a wilful falsehood concerning any material matter in controversy, they would be at liberty, if they thought the circumstances warranted them in so doing, to reject his testimony in whole or in part, and if, in such case, the request had been denied, there is authority for holding that the refusal might have been successfully assigned for error. So, in this case, upon the assumption mentioned, if the company were of opinion that the improper element of damages so affected the judgment of the witnesses as to seriously impair or to destroy its value, it was their duty to ask a specific instruction concerning it, but, in the absence of such request, we do not think that the failure of the judge to give such instruc-

tion was so serious a sin of omission as to require a reversal of the verdict and judgment.

One other matter remains to be considered. It was elicited upon cross-examination of several of the witnesses for the defendant in error, that their estimate of values was influenced in some degree by the prices for which, according to their information, certain other specified lots in the vicinity of that in controversy had then recently been sold. After the alloted number of witnesses as to values, on both sides, had testified and been excused, the company produced another witness and made the following offer of proof by him:

"I offer Mr. McAllister to prove from his own actual knowledge of the sales in the year, latter part of the year, 1898, and during the year 1899, of the sales in the market, of property, lots in this vicinity, and to whose attention the witnesses for the plaintiff were called upon cross-examination. This witness will not be called for the purpose of giving his opinion as to the value of the lot. It is for the purpose of proving the sales in the market of the lots in question, referred to on the plat, which have been testified to on cross-examination by the witnesses for the plaintiff.

"I desire to offer this witness to prove by him, of his actual knowledge, of the sales hereinafter referred to, being conducted by him as the representative of one, either the purchaser, or vendor, or the owners in question of the lots in question, being either purchased or sold by the Union Pacific Railroad Company in the fall of 1898 and the year 1899; the principal pieces of property of which he has actual knowledge of the sales, terms and conditions, prices, etc., and to which I will ask him directly are: lots 1, 2 and 3 in block 204, part of lots 5 and 6, block 191; lots 7 and 8 in block 192, and lots 1 and 2 in block 231. I say in connection with this offer, that this witness has actual knowledge of the sales; that they were made during the period of time he conducted them for the defendant; and he knows exactly and accurately the amount

paid either by the company in the purchase or the amount received by it when it was vendor."

The offer was, upon objection, refused and the plaintiff in error excepted. In our opinion this ruling was erroneous. The testimony with respect to the prices obtained in these sales would not have been admissible upon direct examination, but was permissible upon cross-examination to test the fairness of the witnesses' opinions as to the value of the property involved in the action, and the degree of their competency to testify as to their value. *Spring Valley Waterworks v. Drinkhouse*, 92 Cal. 528. But how could the test be applied in the absence of evidence showing whether the specific information, upon which the witnesses confessedly relied, was or was not accurate and trustworthy? It is as though a witness to prove an *alibi* should testify that, at the hour when the offense was committed in Omaha, he saw the accused in conversation with some well known person in Lincoln. Can there be any doubt that such person could be produced to testify that the individual with whom he was talking, at the time and place named, was not the accused? The evidence offered did not tend, at least not directly, to establishment of the value of the lot in suit, but to the determination of the weight and significance to be attributed to the testimony of the witnesses who had given their opinions upon that subject. The witnesses had testified to the amount of probable rentals to be derived from the property, after a supposed building of a certain, but general, description should have been erected thereon, and to an assumed cost of such an erection. Suppose that, prior to the trial, such a building had been erected upon the same or exactly similar property similarly situated, would it not have been competent to prove the actual cost of the structure and the actual amount of its net revenues? It seems to us that it would, because by no other means could the test above mentioned have been applied. Conceding that the witnesses in such case properly base their estimates, in part, upon conjectural expenditures and

revenues, it can not, we think, be doubted that their guesses in this respect might be corrected or verified, as the event should turn out, by a comparison with realities. And, by a parity of reasoning, we think that, when witnesses testify as to what they suppose certain lots have brought at specific sales, and that such supposed prices have influenced them in estimating the value of the property in suit, it is competent to show what those prices actually were.

For these reasons we recommend that the judgment of the district court be reversed and a new trial ordered.

REVERSED.

DUFFIE, C., concurring in all save the last point in the syllabus.

I fully concur in the foregoing opinion, with the exception of the point embraced in the last syllabus.

The expert witnesses called by the plaintiff based their opinions of the value of the lot in question, to some extent, on what they had heard and understood had been paid for other lots in the vicinity, sold about the time condemnation proceedings were commenced. It was clearly the right of the defendant to show, if such were the fact, that the purchase price paid for the lots referred to by the witnesses for the plaintiff was less than the amount which these witnesses understood it to be. In this view, the offer as made by the defendant was wholly immaterial, as it was not proposed to show that the purchase price of the lots referred to was less than that which plaintiff's witnesses had said they understood to be the consideration received for them, and on which their opinion of the value of the lot in question was partially based. If the actual consideration paid, or agreed to be paid, for these lots was the same, or greater than the consideration, as understood by plaintiff's witnesses, it is evident that the rejecting of the evidence could not have injuriously affected the defendant.

The following opinion on rehearing was filed February 17, 1904. *Former judgment vacated. Judgment of district court affirmed:*

1. **Evidence as to Value.** The value of real property can not be shown by proof of independent sales.

2. ———: OFFER. When a witness as to the value of real estate has testified that he has based his opinion upon the prices obtained upon sales of other specifically described real estate in the neighborhood of that in controversy, an offer of evidence of the prices actually obtained at such sales must include an offer to prove that such prices were in fact different from what the witness, in basing his estimate of value thereon, understood them to be.

POUND, C.

After reading the record and examining the two opinions in this case, I feel constrained to disagree with each, and to take the position that the judgment should be affirmed. While the question is in dispute, the better rule, and the one adhered to in this jurisdiction, seems to be that the value of real property may not be shown by proof of independent sales. Witnesses, who show themselves competent, may give their opinion as to value, and thereupon, on cross-examination may be asked as to particular sales in the neighborhood. *Kerr v. South Park Commissioners*, 117 U. S. 379; 1 Jones, Evidence, sec. 165. But, it is said, if the witnesses to value may be cross-examined as to particular sales in order to test their knowledge, the test must be made effective by permitting further proof as to the facts and circumstances of the sales, so as to determine whether the witnesses correctly understood and stated them. On this ground, it is assumed that there is an exception to the general rule, and that proof of independent sales may be introduced following up such cross-examination. I have not been able to find any authorities in support of this proposition, and I can not accede to it. Every reason for excluding such evidence in the first instance applies to it when offered in support of cross-

examination, to test the opinion of an expert witness. It is obvious that when the sale of a particular tract for a particular price is shown, there are still many facts to consider, which may be very material. The nature of the sale, the situation of the parties, the relation of the lot sold to the one in controversy, and their comparative value, are only some of these questions. From an issue as to the value of the tract in controversy, the cause would soon branch into a series of disconnected controversies as to the facts and surrounding circumstances of an indefinite number of particular sales of other tracts. The parties can not know, until these collateral questions are raised, what they will be, nor are they prepared, always, to go into them in a satisfactory way. In the analogous case of cross-examination to impeach a witness, the cross-examiner must be satisfied with the answer given him, and is not suffered to enter upon an investigation of collateral questions. While I appreciate the desirability of proper opportunities to test expert evidence, I do not think the trial should be turned into a series of detached investigations of collateral questions, merely for this purpose. It is well settled that cross-examination of experts will be allowed a wide range; and this ought to suffice.

I do not think that the answers of the witnesses in the case at bar, on cross-examination, as to how far they took specified sales of certain other lots into account in their estimate of value, are entitled to the effect sought to be given them. None of the witnesses rested their testimony upon these sales. They agreed that such sales were to be considered, but one witness, at least, insisted that the lots in question were not similarly situated to the one in controversy, and the others testified rather to the general value as affected by the reports and current public understanding of the sales, than to the sales themselves.

I should recommend that the former judgment be vacated and the judgment of the district court affirmed.

By the Court: We think the foregoing opinion of Mr.

Commissioner POUND, together with the dissenting opinion of Mr. Commissioner DUFFIE upon the first hearing, correctly state the law upon the points discussed. The other points involved in the case, we think, are correctly disposed of in the opinion of Mr. Commissioner AMES upon the first hearing, *ante,* p. 150. The evidence offered was not competent as bearing directly upon the question of value of the real estate in controversy. If this were an open question in this state, as counsel for the company, in the brief filed since the last hearing, seems to regard it, the authorities cited and reasons advanced would be well worthy of consideration. *Omaha S. R. Co. v. Todd,* 39 Neb. 818, and *Chicago, R. I. & P. R. Co. v. Griffith,* 44 Neb. 690, both recognize the rule stated by Mr. Commissioner POUND, and, although they are predicated upon a doubtful application of *Dietrichs v. Lincoln & N. W. R. Co.,* 12 Neb. 225, still, upon a question of this kind, they must be regarded as having committed this court to the doctrine which they announce. The third paragraph of the syllabus of the former opinion is incorrect, and is modified to conform to the opinion of Mr. Commissioner DUFFIE above referred to.

The former judgment of this court is vacated and the judgment of the district court is affirmed.

AFFIRMED.