POWERINE COMPANY, APPELLANT, V. GRIMM STAMP & BADGE COMPANY, APPELLEE.

FILED MAY 22, 1934. No. 28861.

*Perry, Van Pelt & Marti,* for appellant.

*Mockett & Finkelstein, contra.*

Heard before ROSE and PAINE, JJ., and LIGHTNER, REDICK and THOMSEN, District Judges.

LIGHTNER, District Judge.

Suit for damages on account of breach of warranty. Judgment for defendant, and plaintiff appeals.

The principal assignments of errors and the only ones discussed in the brief are, first, that the verdict is against the clear weight of the evidence, and, second, that hearsay testimony and self-serving declarations prejudical to the plaintiff were admitted. No complaint is made about the instructions.

Plaintiff's petition sets forth the corporate existence of the parties; recites that on February 28, 1931, plaintiff was solicited by defendant for an order for signs to be used out-of-doors in advertising the products of plaintiff in its trading territory, which covers several states; that at that time the defendant represented to plaintiff that the signs were in all respects suitable for outdoor advertising purposes and would not fade, deteriorate or become unsightly when exposed to weather; that plaintiff believed the representations and relied thereon in entering into a contract on February 28, 1931, with the defendant for the purchase of a quantity of signs; that defendant delivered to plaintiff in Denver, Colorado, 1,776 signs; that plaintiff paid the contract price of $2.24 per sign for the signs, paid freight on the signs in the sum of $390.72, and that plaintiff had the signs erected in widely scattered places throughout its trading territory as was contemplated by the parties at the time the signs were contracted for, and that the erecting of said signs cost the plaintiff the sum of $2.50 per sign, or a total of $4,440; that after the erection of the signs plaintiff learned that the representations of the defendant concerning the signs were false and fraudulent; that the signs were not suitable for outdoor advertising purposes and that the signs quickly faded, deteriorated and became unsightly and uninviting in appearance; that, by reason thereof, the contract was breached

by the defendant and the value of the signs has been lost to plaintiff, and plaintiff has been damaged in the sum of $10,000, for which amount the plaintiff prayed judgment.

Defendant's answer denied the allegations of plaintiff's petition; admitted the corporate existence of plaintiff and defendant; and alleged that on April 15, 1931, plaintiff and defendant entered into a written contract wherein defendant agreed to manufacture and sell to plaintiff and plaintiff agreed to buy a certain quantity of signs; that 2,076 signs were manufactured by defendant and delivered to and received by plaintiff; 300 of the signs were sent to Los Angeles, California, and 1,776 to Denver, Colorado, at plaintiff's request; that the signs were manufactured in accordance with the written agreement, and that defendant has complied with all the conditions imposed upon it by the written contract, and that plaintiff has retained the signs and obtained all the benefits therefrom. A copy of the written agreement is attached to the answer.

For reply plaintiff denied the allegations contained in defendant's answer; and alleged that the contract attached to defendant's answer did not purport to and did not embody all the terms of the contract between plaintiff and defendant; that the same constituted only a confirmation of the order for signs given defendant's salesman on February 28, 1931; that no sample was submitted to plaintiff, but only a mere design showing the lettering; that plaintiff never had an opportunity to learn that defective material was used and no opportunity to learn that the signs were of an inferior quality, but that the said defects were hidden and concealed and plaintiff did not learn the true facts in regard thereto until after the signs had been erected and exposed to weather conditions. Ratification of the representations of defendant's agent and estoppel to deny his authority were also pleaded.

Appellant's first proposition relied upon for reversal is that the verdict is against the clear weight of the evidence. We have carefully read the entire record and find that

there was sufficient evidence from which the jury could have found that no warranty was made, that if a warranty was made plaintiff suffered no damages by reason of the alleged breach thereof; that if a warranty was made and the signs did not comply with it their condition was due to the varnishing by Mr. Newhouse, who erected them for plaintiff, rather than to faulty construction by defendant.

Taking these up in reverse order, we find that there was evidence in the record to the effect that Mr. Newhouse, who was putting the signs up for plaintiff, varnished them without knowledge or consent of defendant, and that if improper varnish was used, varnish that did not have an "affinity" for the paint underneath, it would cause the signs to deteriorate.

As to damages sustained the evidence also was conflicting. The one or two signs introduced in evidence presented a very poor appearance, but there was no uncontroverted proof that all were in the same condition. Furthermore, the witnesses differed as to the value for advertising purposes of a sign that is bright and new looking and one that has grown dull from exposure to the weather or other causes. It is, it seems to us, a question of a speculative nature, one depending on the psychology of the various people who travel along the road. Mr. Grimm, president of the defendant company, testified that he had been dealing in and manufacturing advertising signs for fifteen years, and that a sign that is not shiny and bright has no less advertising value than a sign that is shiny and bright; that a bright, shiny sign creates a glare and detracts from the legibility of the sign. If you look down the street and the sun is shining on a highly varnished sign, it is more difficult to read than a sign with a semigloss, which is the sign advertising people are buying today; the tendency among people using advertising signs is toward semigloss signs or with shell or semidull finish, as it stands out better for that reason; he arrives at this conclusion from inquiries they get from all over the country from sign-buyers. It seems to us that the ques-

tion of damages was one that the jury had the right to settle either way under the evidence in this case.

In regard to the warranty, the evidence quoted in discussing plaintiff's next proposition shows that there was evidence to support defendant's claim that no warranty was made, thus making it a question for the jury. Furthermore, defendant's agent who sold the signs to plaintiff had ceased working for defendant and himself had a suit pending against defendant and was unfriendly to defendant. While he testified that he represented that the signs would stand up from one and one-half to two years in good shape, opposed to this was evidence to the effect that he had no authority to make any such representation, the written order did not make any such warranty, and there was evidence to the effect that, when he complained to Mr. Grimm about the signs in St. Louis after they had been erected, he did not speak of any such warranty or representation, although he naturally would have done so if it had been made, which facts, in view of the unfriendly attitude of such agent, might have justified the jury in believing that the evidence of a representation or warranty, although it could not be directly controverted by the defendant, was a fabrication. It seems to us that there is ample evidence to sustain the finding of the jury on the several different theories above referred to and that this contention of the plaintiff must therefore be overruled.

The second proposition relied upon for a reversal is that the court erred in receiving in evidence, over the objections stated, the following questions and answers, namely (the witness was Mr. Grimm, the president of defendant corporation, and the person referred to was Mr. Rittinger, the agent of defendant who made the sale to plaintiff) :

"Q. Did you at any time tell him or any of your company authorize him to guarantee the length of time that a varnish or paint on a sign will stand up and be bright? Judge Perry: The plaintiff objects to the ques-

tion and any answer thereto on the ground it calls for hearsay, is self-serving, and irrelevant and immaterial under the issues in this case. The Court: Overruled. A. No, sir. Q. Did you know or did the Grimm Stamp & Badge Company know at any time until you heard it this morning that there was any guaranty at all on the length of time that these signs you manufactured for the Powerine Company under the order, exhibit No. 3, would be shiny and bright and clear for any length of time? Judge Perry: The plaintiff objects to that question and to any answer thereto on the ground that it calls for hearsay, and is self-serving, and irrelevant and immaterial under the issues in this case, and that it is leading and suggestive. The Court: Overruled. Exception. Q. You may answer. A. No."

There are several theories upon which the testimony was admissible. The testimony is not hearsay in so far as it pertains to what Mr. Grimm himself told or authorized Mr. Rittinger. The fact sought to be proved by the question was the authority of the agent. This can be proved by the written contract of agency, if there was one, or by the oral contract, or by any oral statement or directions to the agent. In 2 Jones, Commentaries on Evidence, 649, sec. 300, it is said: "It is hardly necessary to cite authorities to the obvious proposition that when proof is to be made of a parol contract, or when for other reasons the statements of a person are relevant, such statements may be proved by third persons who were present as well as by the one who used the language. In such case the statements are not hearsay, but substantive evidence." In 2 C. J. 933, it is said: "Testimony as to the fact of the agency, either for the purpose of proving or disproving it or showing the limitations upon the agent's authority, may be given by the principal, or the alleged agent, or by any other person having knowledge of the relation, such as by another agent who has such knowledge." In the same volume in the notes on pages 932, 933, are the following statements of the law:

"Where the question of the authority of an agent to make a contract is in issue, all evidence which tends in any way to show such authority or the limitation upon such authority is admissible. *Keane v. Pittsburgh Lead Mining Co.,* 17 Idaho, 179. * * *

"Where the fact of agency or the authority of an agent is in dispute, and is not evidenced by a written instrument but rests in parol, any evidence tending to prove the agency is admissible. *Robinson & Co. v. Greene,* 148 Ala. 434.

"In view of the negotiable instruments act, providing that the signature of a party may be made by a duly authorized agent, without any particular form of appointment, and his authority may be established as in other cases of agency, an agency with authority to indorse notes may be proved as agency is proved in other cases, and by written authority. *Scotland County Nat. Bank v. Hohn,* 146 Mo. App. 699."

These authorities would justify direct testimony from Mr. Grimm as to what he told or authorized the agent to do, or his knowledge of the alleged warranty.

We doubt if the answers called for by the questions are hearsay. It seems to us that it might be well within the knowledge of the president of the defendant corporation to know if any one had authorized the agent to make the guarantee in question. It might be that the president was the only officer who had any authority whatever to hire agents and give them authority. He might be able to answer as to the knowledge of his company. Cross-examination as to foundation might have revealed lack of the requisite knowledge, but plaintiff made no request to cross-examine as to foundation. The only vice of the question in our judgment is that it probably calls for a conclusion of the witness, but this objection was not made. It is not self-serving in a legal sense, because it does not call for a statement made by some one out of court. The following is quoted from 6 Words and Phrases, Third Series, p. 1012: "A 'self-serving declaration' * * * is one

made by a party in his own interest at some time and place out of court, and does not include testimony which he gives as witness at the trial. *Brosnan v. Boggs,* 101 Or. 472." It also seems to us that the objection was not good as to the whole question, and was properly overruled on that ground alone. "The rule is elementary and based upon sound reason, that objection made to a question is properly overruled, unless the objection is good as against the entire question. 'Where a part of testimony, objected to as a whole, is admissible, it is not error to overrule the objection.' *Schulze v. Jalonick,* 44 S. W. 580 (18 Tex. Civ. App. 296)." *Western Union Telegraph Co. v. Church,* 3 Neb. (Unof.) 22. See, also, *Union P. R. Co. v. Stanwood,* 71 Neb. 150; *Neldeberg v. City of Omaha,* 124 Neb. 511.

Our conclusion is that the evidence is sufficient to sustain the verdict, and that there was no prejudicial error in overruling the objections to the questions referred to. The judgment of the district court is therefore

AFFIRMED.