IN RE ESTATE OF LESLIE E. STANTON, DECEASED.
COUNTY OF DOUGLAS, NEBRASKA, A POLITICAL SUBDIVISION,
APPELLANT, V. WILLIAM N. PARKS, PERSONAL REPRESENTATIVE OF
THE ESTATE OF LESLIE E. STANTON, DECEASED, APPELLEE.

516 N.W.2d 586

Filed May 20, 1994.    No. S-92-490.

James S. Jansen, Douglas County Attorney, and Denise A. Hill for appellant.

Joseph B. Reedy for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

GRANT, J., Retired.

The will of Leslie E. Stanton was admitted to probate in the county court for Douglas County, Nebraska. Under the will,

the residue of decedent's estate was left to appellee, William N. Parks, after the satisfaction of six specific devises. On November 21, 1991, an "Order Determining and Assessing Inheritance Tax" was entered by the county court. In that order, the court found that Stanton "stood in the acknowledged relation of a parent to William Parks and the rate of tax on any portion received by William N. Parks from the estate of Leslie E. Stanton shall be determined under Nebraska Revised Statute 77-2004."

Neb. Rev. Stat. § 77-2004 (Reissue 1990) provides,

> [i]n the case of . . . any person to whom the deceased for not less than ten years prior to death stood in the acknowledged relation of a parent . . . the rate of tax shall be one percent of the clear market value of the property in excess of ten thousand dollars.

The County of Douglas contends that Parks is not the acknowledged son of the decedent and that his inheritance should be taxed on his basis as a great-nephew, pursuant to Neb. Rev. Stat. § 77-2005 (Reissue 1990). Section 77-2005 provides that property passing to a relative such as a great-nephew shall be taxed at "six percent of the clear market value of the property received by each person in excess of two thousand dollars . . . and on all the excess over sixty thousand dollars, the rate of tax shall be nine percent." The net value of the share of Parks in the estate, for inheritance tax purposes, was approximately $250,000. Of that amount, $230,000 was in the form of certificates of deposit jointly owned by the decedent and Parks.

Douglas County appealed the order of the county court to the district court, where the order was affirmed. Douglas County then appealed to the Court of Appeals, and we, under the authority of Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992), removed the case to this court in order to regulate the caseloads of the appellate courts.

On appeal, Douglas County assigns as error the actions of the district court in (1) "determining that the evidence regarding the will was admissible" and (2) "ruling that there was evidence at trial showing that William N. Parks was an acknowledged son." We affirm.

Neb. Rev. Stat. § 77-2023 (Reissue 1990) provides that appeals "may be taken from the determination of the [inheritance] tax due made by the county court to the district court as provided in sections 25-2728 to 25-2738." Neb. Rev. Stat. § 25-2733 (Reissue 1989) provides that the district court shall review the case for error appearing on the record in the county court. Neb. Rev. Stat. § 25-1911 (Cum. Supp. 1992) provides that judgments or final orders of the district court will be reviewed for error appearing on the record. It should be noted that § 30-2209(35) (Reissue 1989) provides that a proceeding under the Nebraska Probate Code includes actions at law and suits in equity, "but does not include a determination of inheritance tax under Chapter 77, article 20."

The record made in the county court shows that in 1948, Parks was 16 years old and was an orphan in the State of Mississippi. His natural father died before he was born, and his mother was 18 years old when he was born and "gave him away." He had lived with 8 or 10 different families; aunts, uncles, and a grandfather. The decedent and his wife went to Mississippi and returned with Parks to Omaha.

Parks testified that after he came to Omaha with the Stantons, that was his "first father and mother image that was my own. No one else around but us three." Parks further testified: "He taught me everything I know. And I treated him like a father. He treated me like a son. And my kids — he was the only grandfather our four children have."

Parks further testified that the decedent, beginning in 1950, began introducing Parks as "his boy" to friends in the Fraternal Order of Eagles and to family members. After 1950, decedent always referred to Parks as his son or his boy, as long as he could speak, up to the time he died. The decedent suffered from Lou Gehrig's disease and spent the last 2 years of his life in a nursing care center, where he died at the age of 86. Parks testified that the decedent always referred to Parks as his boy and that the decedent

was always looking for his boy to come and see him at the care center. Any time he had troubles — medical problems the nurses didn't like, he was referred to me at the care center. They looked to me as a son. I signed all the things

for his operations and all the medicines, and they respected me in that capacity.

Parks testified that he lived in the Stanton home until he was married in 1951, when he was 19. He testified that he joined the U.S. Air Force shortly after he was 19 and served for 26 years until he retired in 1978. When he went into the service in 1952, his wife moved back to the decedent's home and "all the time I was in the military until I owned my house in 1965, his [decedent's] home was my home. Permanent — that was my permanent address for all those years."

During his Air Force service, Parks spent time overseas, including Vietnam, and during these times, the decedent wrote to him once a week and "took care of my wife and kids while I was gone."

Introduced in evidence was a birthday card entitled "For you, Son On Your Birthday" and signed "Les." Parks testified he had received this card from the decedent "within the last four or five years." Also received in evidence was a letter to Parks from the Stantons in 1967. This letter was addressed "Dear Son" and ended, "Write when you can. Your old Mom and Pop the Stantons."

Appellant first contends that the trial court erred in determining that the evidence concerning the will was admissible and asserts that no evidence beyond the four corners of the will was admissible. The basis of appellant's objection to the evidence in question is the contention that "William Parks is asking the court to change the will to read that decedent had an acknowledged son." Brief for appellant at 6. Appellant argues that the decedent's will states that the decedent is a widower with no children and that "[n]owhere in the will does the decedent refer to William N. Parks as a son." *Id.* Appellant then states that the will is unambiguous, quoting *In re Estate of Walker*, 224 Neb. 812, 818-19, 402 N.W.2d 251, 256 (1987): "When language in a will is clear and unambiguous, construction of a will is unnecessary and impermissible."

Appellant's statement is correct, but has little to do with the problem before us. The will of the decedent is clear and unambiguous. The will sets out six specific devises and provides that the remainder of the estate is devised to Parks, with the

usual contingent provisions in the case of the death of Parks before the death of the testator. The will is clear, and there is no need to construe it. The problem before the trial court was to determine the proper inheritance tax to be paid to the State of Nebraska, and to make that determination, it is necessary to determine the relationship between the decedent and the persons taking under the will. The county court was not making a determination of heirship and was not construing the will. There is no merit in appellant's contention that "William Parks is asking the court to change the will to read that the decedent had an acknowledged son." Brief for appellant at 6. Parks asked the county court to determine that, for inheritance tax purposes, he was "a person to whom the deceased for not less than ten years prior to death stood in the acknowledged relation of a parent," as provided in § 77-2004. As noted above, the determination of inheritance tax is not a proceeding under the Nebraska Probate Code. § 30-2209(35).

Appellant contends that the will controls the inheritance tax determination, even though, in this case, almost all of the property received by Parks was received as that of a joint tenant with the decedent in many certificates of deposit.

Appellant itself, in calculating inheritance taxes, has considered evidence that could only be obtained from sources outside the will. Appellant contends that the inheritance tax rate for Parks should be "as a great nephew pursuant to §77-2005." Brief for appellant at 5. The will in question does not set out any relationship between Parks and the decedent. Similarly, the court apparently considered evidence outside the will in determining the inheritance taxes for the individual devisees. The will set out five individual devises of $3,000 to five named individuals—four of them apparently the children of Parks. The fifth individual was "Clyde Culp of Lexington, Tennessee." Each of the Parks children was required to pay a tax of $60, apparently under § 77-2005 (providing for the tax on transfers to "remote relatives")—6 percent of the inheritance over $2,000. Culp had no tax due, because, apparently, he received his devise under § 77-2004 (transfer to "immediate relatives"), which provides for an exemption of $10,000 from the tax. There is no statement in the will as to the relationship of

these individuals, nor is there any evidence in that regard in the record before us. Evidence outside the will must have been considered in setting the different taxes.

Extrinsic evidence was the basis of our decision in *In re Estate of Dowell*, 149 Neb. 599, 31 N.W.2d 745 (1948). In that case, the evidence showed that Luella Stalder's mother died when the child was 3 years old, and the child was taken into her paternal uncle Dowell's home, where she lived and "treated the Dowells as her parents" until she married at age 28. *Id.* at 600, 31 N.W.2d at 746. The opinion then states, "The relationship continued until the time of the death of Hattie L. Dowell [the wife of the paternal uncle]." *Id.* It is clear that evidence extrinsic to the will was the basis of the decision, when we affirmed the action determining that Luella Stalder was entitled to the exemption.

Appellant also contends that *In re Estate of Dowell* also "indicates" that the phrase "stood in the acknowledged relation of a parent," in § 77-2004, requires that there must be a written acknowledgment of the relationship. That is not correct. There was no written acknowledgment in the facts set out in the *In re Estate of Dowell* opinion.

In *In re Estate of Dowell*, the opinion sets out an analysis of § 77-2004, as it existed in 1948, and which is substantially the same as the current statute. It is stated:

> The foregoing provision [§ 77-2004] contemplates that persons falling within three classes are to be considered within the parental relation for the purposes of the inheritance tax law. The first is the actual relationship of parent and child, the second is the relationship created by adoption proceedings, and the third embraces any person to whom the deceased for not less than ten years prior to death stood in the acknowledged relation of a parent. It is the latter provision only that claims our attention in the present case.

149 Neb. at 601, 31 N.W.2d at 746.

We then stated when § 77-2004 (1943) and Neb. Rev. Stat. § 30-109 (1943) (which statute provided that a child born out of wedlock was an heir of a person who acknowledged, in writing, that he was the father of such child) were construed together,

such children "would fall in the first classification, rather than the third." 149 Neb. at 602, 31 N.W.2d at 746. We hold that no written form of acknowledgment is required to establish a decedent's "acknowledged relation of a parent" within the ambit of inheritance tax determinations. Such a tax determination is the subject of this case. For the purpose of determining whether a devisee under a will is a "person to whom the deceased for not less than ten years prior to death stood in the acknowledged relation of a parent," under § 77-2004, it is not necessary that there be a written acknowledgment.

For Nebraska inheritance tax purposes, in determining the relationship between a testator and persons taking under a will, statements in the will are not conclusive on either the taxing authority or the devisee, and the relationship may be proven by the preponderance of admissible evidence on the point. Appellant's first assignment of error is without merit.

Appellant's second assignment of error is that the trial court erred in ruling that there was evidence at trial showing that Parks was an acknowledged son. Appellant contends only that the evidence offered is self-serving and subject to Neb. Rev. Stat. § 27-403 (Reissue 1989).

As to the contention that the evidence offered by the appellee was "self-serving" and was "offered by witnesses who have a financial interest in the outcome of the Court's decision," brief for appellant at 7-8, we note that there were only two witnesses at the trial, Parks and the lawyer who drew the will of the decedent.

As to the lawyer, there is absolutely no evidence that the lawyer had any "financial interest" in the case. As to the testimony of Parks, his testimony was like that of a great many parties, in that his testimony supported his position. If believed, his evidence tended to show that, for inheritance tax purposes, he stood in the relationship of an acknowledged son to the decedent.

We agree with the statement set out in *Jones v. State*, 175 Neb. 711, 717-18, 123 N.W.2d 633, 638 (1963):

> The trial court concluded in part that there was no competent evidence adduced of the neglect testified to for

the reason that the evidence was all self-serving. We are at a loss to understand the court's reasoning. We must assume the court was confusing the testimony with a self-serving declaration, which is a statement made out of court which is offered as evidence in the trial. There were no self-serving declarations involved herein. It is true that all of the witnesses were either the appellants, relatives of one of the appellants, or friends of the appellants, but they all testified to the facts as they saw them, and were examined and cross-examined by the attorneys participating and by the court itself. . . .

As we said in Powerine Co. v. Grimm Stamp & Badge Co., 127 Neb. 165, 254 N. W. 722: "A self-serving declaration is one made by a party in his own interest at some time and place out of court, and does not include testimony which he gives as witness at the trial."

If appellant's position were adopted, no plaintiff or defendant could testify to much of anything in a case in which they were involved. The trial court did not err in overruling appellant's objections that Parks' testimony was "self-serving."

Similarly, appellant's contention that Parks' evidence should have been excluded under § 27-403 is without merit. That section provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We have examined the evidence offered by Parks, and we fail to see how Parks' testimony as to the manner he met, lived with, and interacted with the decedent could in any way be considered to constitute a danger of unfair prejudice or be considered as confusing the issues. As stated in *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 439, 345 N.W.2d 300, 306 (1984),

Most, if not all, items which one party to an action offers in evidence are calculated to be prejudicial to the opposing party; therefore, it is only "unfair prejudice" with which we are concerned. In the context of § 27-403 such prejudice means a tendency to suggest a decision on an improper basis.

Appellant's contention in that regard is without merit.

The judgment of the district court, affirming the judgment of the county court, is affirmed.

AFFIRMED.